FILED
3/21/18 2:49 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Case No. 15-23639-GLT |
| **EDWARD J. ROCHE** and : | Chapter 13 |
| **KATHLEEN J. ROCHE**, : | |
| Debtors. : | |
| : | Adv. Proc. No. 16-2015-GLT |
| **COMMONWEALTH OF PENNSYLVANIA** : | |
| **OFFICE OF ATTORNEY GENERAL**, : | |
| : | Related to Dkt. No. 22 |
| Plaintiff, : | |
| v. : | |
| **EDWARD J. ROCHE** and : | |
| **KATHLEEN J. ROCHE**, : | |
| Defendants. : | |

Counsel:   Jesse F. Harvey, Esq., for Plaintiff, Commonwealth of Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

Donald R. Calaiaro, Esq., for Defendants, Edward and Kathleen Roche.

## **MEMORANDUM OPINION**

The Commonwealth of Pennsylvania seeks a determination that certain debts owed by Consignments on Centre, a now-defunct consignment shop in Pittsburgh's East End, are non-dischargeable. As an initial matter, the Court must determine whether Consignments on Centre was operated as a sole proprietorship by Kathleen J. Roche or was instead a partnership between her and her husband, Edward J. Roche. After conducting an evidentiary hearing on this limited issue and reviewing the evidence presented, the Court finds insufficient proof within the record to establish the existence of a partnership between the spouses.

**I.**

Consignments on Centre (the "Store") was a consignment store specializing in quality used women's fashions.[1] Prior to 2001, the Store was operated by Women's American Art, a nonprofit organization, with Debtor, Kathleen J. Roche ("Kathleen"),[2] serving as the Store's manager.[3] Kathleen purchased the Store in 2001. It is undisputed that Kathleen operated the Store as its sole owner from 2001 to 2013. During that time span, Kathleen ran the business as a full-time onsite owner-manager and was assisted by several unpaid volunteers.

Debtor Edward J. Roche ("Edward"), her husband, was employed in the construction industry until he was permanently disabled in 2004. Since that time, Edward's personal income is solely derived from social security and disability insurance from MetLife. After he became disabled, Edward drove Kathleen to and from the Store each day, but he usually did not stay there during working hours.[4]

In 2013, Kathleen suffered a debilitating illness that caused her to be intermittently absent from the Store until it was finally closed in June 2015. When Kathleen could not be present and the Store was not otherwise closed, Edward would open and close the store and remain on the premises. The extent of Edward's other duties and responsibilities at the Store between 2013 and 2015 is the focus of the current dispute as to whether he was a partner in the Store.

---

[1]  The Commonwealth's original complaint identified Consignments on Centre as a "sole proprietorship consignment store." See Dkt. No. 1 at ¶ 9. This reference was changed to a partnership in the Commonwealth's first amended complaint. Dkt. No. 19 (the "Amended Complaint") at ¶ 9.

[2]  The Debtors are referenced by their first name for clarity. The Court intends no disrespect by doing so.

[3]  Transcript of Sept. 1, 2017 Hearing filed at Dkt. No. 80 ("Trans.") at 11:4–24.

[4]  The record is not clear if Edward performed any chauffeuring duties between 2001 and 2004 (when he became disabled).

2

Kathleen and Edward filed a voluntary joint petition under chapter 13 of the Bankruptcy Code on October 2, 2015. The case was converted to chapter 7 on March 18, 2016.[5]

The Commonwealth of Pennsylvania, Bureau of Consumer Protection, initiated this adversary proceeding as *parens patriae*[6] on behalf of consumers who have been damaged by the allegedly fraudulent practices of the Debtors in operating the Store, including Pennsylvania residents who filed 245 claims in this bankruptcy case. Through its *Amended Complaint*, the Commonwealth seeks an exception to discharge under § 523(a)(2)(A) and (a)(4) for each of those claims.[7]

The parties agreed to bifurcate the issues for trial, first setting an evidentiary hearing on the question of whether Kathleen and Edward operated the Store as a partnership, and deferring the resolution of the remaining issues of dischargeability to a later date. The evidentiary hearing on the partnership issue was held on September 1, 2017.[8] The Commonwealth called both Debtors as witnesses, but the defendants did not call any witnesses. After the close of evidence, the Court took the matter under advisement.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(2)(I). Venue is proper in this district under 28 U.S.C. § 1408.

---

[5] Bankruptcy No. 15-23639, Dkt. No. 96. The chapter 7 trustee has not taken a position or appeared in this adversary proceeding.

[6] The Commonwealth also appears pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. §§ 201-1, *et seq.* under which it is authorized to restrain unfair methods of competition and unfair or deceptive acts or practices declared unlawful, and to seek restitution on behalf of consumers.

[7] Adversary 16-2015 Dkt. No. 19.

[8] Dkt. No. 68.

## II.

### A.  Pennsylvania Partnership Law

Whether a partnership has been formed under Pennsylvania law is governed by the Uniform Partnership Act of 2016, 15 PA. CONS. STAT. § 8422.[9]  This statute provides, in relevant part:

> **§ 8422. Formation of partnership**.
>
> (a)  **General rule.** — Except as provided in subsection (b), the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.[10]
>
> *   *   *
>
> (c)  **Rules for determining formation of partnership.** — In determining whether a partnership is formed, the following rules apply:
>
> > (1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.[11]
> >
> > (2) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or

---

[9] The 2016 act was the Pennsylvania enactment of the Revised Uniform Partnership Act ("RUPA"), promulgated by the National Conference of Commissioners of Uniform State Laws in 1997, as amended.  It replaced the earlier Uniform Partnership Act ("UPA"), proposed by the Commissioners in 1914 and adopted in Pennsylvania in 15 PA. CONS. STAT. §§ 8301–65 (repealed 2016). The Committee Comment makes clear that the current law on partnership formation is merely a non-substantive recasting of the earlier law, 15 PA. CONS. STAT. § 8311–12, which was in effect throughout the existence of Consignments on Centre.

[10] The Committee Comment warns that the phrase "whether or not the persons intend to form a partnership" was added in § 8422, codifying the case law that held subjective intent to form a partnership was not a requisite to formation. Committee Comment, 15 PA. CONS. STAT. § 8422 (2016).

[11] Even if it is argued that the business was somehow owned by the marital estate, the statute and Committee Comment instruct that something more than passive ownership is required to establish a partnership.  "As subsection (c)(1) makes clear, however, passive coownership of property by itself as distinguished from the carrying on of a business, does not establish a partnership, nor, as stated in (c)(2) does the sharing of gross returns." Committee Comment, 15 PA. CONS. STAT. § 8422 (2016).  Also, according to the Committee, the sharing of profits is a rebuttable presumption rather than *prima facie* evidence of the existence of a partnership.

> common right or interest in property from which the returns are derived.
>
> (3)  A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received [in payment of expenses not relevant in this dispute].
>
> (d)  **Cross reference.** — See section 8416(c) (relating to application of partnership agreement).[12]

The burden of pleading, producing evidence, and of persuasion to establish the existence of a partnership is on the party asserting that existence.[13] The existence of a partnership under Pennsylvania law is a question of fact.[14] In Pennsylvania, partnership agreements may be proven by a writing, oral agreement, or by implication.[15] The Commonwealth concedes that there is no written partnership agreement, nor has it provided evidence to dispute the testimony of both Debtors that they did not consider themselves partners. The Commonwealth's position is that the Debtors' partnership may be inferred from the circumstances.

It is a fundamental axiom of judicial interpretation and construction that the opinions of other sister jurisdictions are not binding precedent, but may be persuasive based on

---

[12]  15 PA. CONS. STAT. § 8416(c) provides as follows:

> Preformation agreement. —Two or more persons intending to become the initial partners of a partnership may make an agreement providing that upon the formation of the partnership the agreement will become the partnership agreement.

[13]  Kirshon v. Friedman, 36 A.2d 647, 650 (Pa. 1944); Knit With v. Knitting Fever, Inc., 742 F. Supp. 2d 568, 580 (E.D. Pa. 2010) (citing Zuback v. Bakmaz, 29 A.2d 473, 474 (1943)).

[14]  Silco Vending Co. v. Quinn, 461 A.2d 1324, 1326 (Pa. Super. Ct. 1983) (citing Rowland v. Canuso, 196 A. 823 (Pa. 1938)); Abel v. American Art Analog, Inc., 838 F.2d 691, 695 (3d Cir. 1988).

[15]  DeMarchis v. D'Amico, 637 A.2d 1029, 1033 (Pa. Super. Ct. 1994) (Partnerships "may be made orally or may be found to exist by implication from all attending circumstances (i.e., the manner in which the alleged partners actually conducted their business, etc.).") (citing Murphy v. Burke, 311 A.2d 904, 907 (Pa. 1973); Barbet v. Ostovar, 417 A.2d 636, 641 (Pa. Super. Ct. 1979)) (emphasis removed).

the facts and circumstances of the individual cases.[16] However, in the case of Uniform Laws, such as the UPA and RUPA, both the Pennsylvania legislature and the courts of the Commonwealth have recognized the importance of the opinions of all signatory states in promoting a comprehensive statutory scheme for issues of common interest among the states.[17]

Pennsylvania enacted the Statutory Construction Act, which provides, in pertinent part, that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."[18] The Legislature clearly expressed its intent that the courts of the state (and, by extension, this Court) are to give "great deference" to the decisions of other states when interpreting uniform laws.[19]

The courts have followed the statutory command and give the opinions of sister states on questions of uniform law great deference.[20] Pennsylvania courts, for example, have looked to the opinions of other states that have adopted the Uniform Partnership Act in interpreting its provisions.[21] Throughout this *Memorandum Opinion*, the Court will only cite to

---

[16] Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pa., 364 A.2d 1331, 1335 (Pa. 1976).

[17] See id.

[18] 1 PA. CONS. STAT. § 1921(a).

[19] 1 PA. CONS. STAT. § 1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.").

[20] Cont'l Ins. Co. v. Schneider, Inc., 873 A.2d 1286, 1293 n.10 (Pa. 2005) ("While it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority, and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme . . . .") (quoting Nat'l Bank & Trust Co. of Cent. Pa., 364 A.2d at 1335); Sternlicht v. Sternlicht, 876 A.2d 904, 911 n.13 (Pa. 2005) ("[I]n construing a uniform law, this Court must consider the decisions of our sister states who have adopted and interpreted such uniform law and must afford these decisions great deference."); see also Commonwealth v. Gilmour Mfg. Co., 822 A.2d 676, 682 (Pa. 2003) (Even where the Commonwealth has not enacted a uniform law, the court should look to prevailing judicial interpretation among the states "because a uniform interpretation of legislation affecting multistate matters is preferable.").

[21] Ruby v. Abington Mem. Hosp., 50 A.3d 128, 132 (Pa. Super. Ct. 2012) (finding "significant similarity, in fact and legal analysis" to the analysis of the UPA by appellate courts in California, citing, in particular, Rosenfeld, Meyer & Susman v. Cohen, 194 Cal. Rptr. 180 (Cal. Ct. App. 1983), overruled on other

6

those other state jurisdictions that have enacted the UPA and RUPA in forms substantially similar to the Commonwealth.

Proof of the existence of a partnership is ordinarily by a preponderance of the evidence.[22] However, the Court observes that several states have held that partnerships between husband and wife require a heightened burden of proof of the existence of the partnership.[23] As discussed below, husbands and wives are by law marital partners, with obligations to each other that in many ways mirror (and often exceed) the obligations of nonmarital partners to each other.

### B.  Intent to Form a Husband–Wife Partnership

Pennsylvania holds that the intent to form the partnership (*i.e.*, the intent to carry on a business for profit as co-owners) is the essential element in partnership formation,[24] especially in the context of husband–wife partnerships.[25] This principle is consistent across the sister states' interpretation of the Revised Uniform Partnership Act.[26]

---

grounds by Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 254 (Cal. 1994)); Northampton Brewery Corp. v. Lande, 2 A.2d 553, 554 (Pa. Super. Ct. 1938) (citing Rader v. Goldoff, 223 A.D. 455 (N.Y. App. Div. 1928); Windom Nat'l Bank v. Klein, 254 N.W. 602 (Minn. 1934)); Yett v. Osterneck, 58 Pa. D. & C. 198, 200 (Pa. Ct. Comm. Pl. 1947) (citing Metropolitan Cas. Ins. Co. of N.Y. v. Cimino, 157 A. 152 (N.J. 1931); Townsend v. Appel Sons, Inc., 164 A. 679 (Md. Ct. App. 1933)).

[22]  Kirshon, 36 A.2d at 650.

[23]  Krudy v. Simpson (In re Simpson), 474 B.R. 656, 664–65 (Bankr. S.D. Ind. 2012) ("When applying the statutory factors to spouses, Indiana courts have required a heightened showing, since 'cotenancy of property and the sharing of losses and profits of a business . . . are consistent with the usual marital arrangement.'") (quoting Soley v. VanKeppel, 656 N.E. 2d 508, 513 (Ind. Ct. App. 1995)); Ins. Agents, Inc. v. Zimmerman, 381 N.W. 2d 218, 220 (S.D. 1986) ("[S]trong evidence is required to prove a business partnership between a husband and wife . . . ."); Miller v. City Bank & Tr. Co. N.A., 266 N.W. 2d 687, 689–90 (Mich. App. 1978) (The burden of proof to demonstrate a partnership is "stricter when relatives are the alleged partners."); Equiventure, LLC v. Wheat, 2012 WL 2089532 at *6 (W.D. Ky. June 8, 2012) ("[T]he mere fact that a wife participates in the conduct of a business does not necessarily establish a partnership between a husband and a wife unless there exists some other indicia of a partnership.") (citing Matter of Ward, 6 B.R. 93, 94 (Bankr. M.D. Fla. 1980)); Paollela v. Paollela, 612 A.2d 145, 146 (Conn. Super. Ct. 1991) (holding that the burden of proof to establish a partnership is on the party alleging partnership and is more strict when relatives are the alleged partners).

[24]  Pappas v. Klutinoty, 118 A.2d 202 (Pa. 1955).

[25]  See, e.g., Lusthaus v. Comm'r of Int. Rev., 149 F.2d 232, 233 (3d Cir. 1945) (declining to recognize a purported husband–wife partnership apparently entered into for tax purposes absent a change in economic

7

Under 15 Pa. C.S. § 8422(c)(3), intent to form a partnership may be presumed (a rebuttable presumption) where there is a sharing of profit. However, both the academic research and case law cautions that profit-sharing in a husband-wife partnership is problematic. As a leading treatise on partnership law observes:

> Often a small business is operated with various types of partner-like participation by spouses or other members of a household. They may help out, or they may help themselves to the proceeds of the business through a joint bank account or otherwise. . . . The problem in determining household partnerships is that aspects of the relationship that would otherwise resemble partnership take on a different coloration in the family setting. The exercise of control by a spouse may be simply that of a helpmate in marriage rather than that of a partner[.]
>
> Where the purported partners draw out of a joint account into which revenues of the business are deposited and from which expenses are paid, this has been regarded as profit sharing, the theory apparently being that the account consists of what is left after expenses are subtracted from revenues. On the other hand, the inference of partnership is weaker where family members draw household expenses from the account because the family members may be sharing as such and not as partners whose share is subject to the risks of the business. Since there is often a close question in the family setting as to whether the sharing in the joint account involves profit sharing, the partnership question frequently must be resolved in these cases with reference to the other indicia of co-ownership.[27]

---

interest); Gibboney v. Derrick, 12 A.2d 111, 112 (Pa. 1940) (identifying substantial evidence of a wife's participation in partnership affairs to deem her a partner in her husband's partnership); Canfield v. Canfield, 4 Pa. D. & C.3d 110, 113 (Pa. Ct. Comm. Pl. 1977) ("E]ven when the parties are husband and wife, a partnership may not occur by default. Rather, the intention of the parties is the prime element of proof."); see also, e.g., Northampton Brewery Corp. v. Lande, 10 A.2d 583, 585 (Pa. Super. Ct. 1939) (noting the differences between a husband–wife partnership and tenancy in the entirety).

[26] Spence v. Tatum, 960 F.2d 65, 68 (8th Cir. 1992) (addressing Arkansas law: "The existence of a [spousal business] partnership depends upon the intention of the parties to form such an entity.") (citation omitted); In re Cramer, 3 B.R. 428, 430 (Bankr. D. Ariz. 1980) (holding that a partnership between spouses can only be shown by subjective intent); In re Griffin, 141 B.R. 207, 211–12 (Bankr. D. Kans. 1992) (holding that the intent to form a partnership between husband and wife must be "clearly proved").

[27] 1 BROOMBERG & RIBSTEIN ON PARTNERSHIP, ¶¶ 2.06[B][5], 2.09 (2d ed. 2016).

Bromberg and Ribstein are consistent with the only two circuit decisions on this issue.[28] The states are equally skeptical of sharing income/profits in a husband-wife partnership.[29] And this skepticism appears rooted in a deep-seated principle of the common law of spousal relations.[30]

### C.    Edward's Role at the Store

The Commonwealth has essentially three arguments in this dispute.  First, although there is neither a written nor an oral agreement between the Debtors to form a

---

[28]  Lampe v. Williamson (In re Lampe), 331 F.3d 750, 757 (10th Cir. 2003) (applying the Kansas UPA: "[T]he existence of a partnership where the alleged partners are spouses raises complex legal issues. The usual indicia of a partnership are blurred by the marital relationship. The co-owning of property, sharing of profits, and the apparent authority for one spouse to act on behalf of the other are all common to the marital relationship even absent a business."); Spence, 960 F.2d at 68 (holding that Arkansas law is consistent with other jurisdictions that held that "[s]haring profits within a family was not sufficient evidence to support the trial court's finding of partnership.").

[29]  Barmes v. IRS, 116 F. Supp. 2d 1007, 1013 (S.D. Ind. 2000)("[W]ith respect to a husband and wife, co-ownership of property and the sharing of business profits do not demonstrate a partnership because those arrangements are common in marriages."); G.R. Little Agency, Inc. v. Jennings, 362 S.E. 2d 807, 812 (N.C. Ct. App. 1987) (finding no partnership where the wife drew living expenses); Chocknok v. State Comm'l Fisheries Entry Comm'n, 696 P.2d 669, 675 (Alaska 1985) (finding undue reliance on profit-sharing component in the test for partnership between spouses); Miller v. City Bank & Tr. Co. N.A., 266 N.W. 2d 687, 691 (Mich. Ct. App. 1978) (finding that a wife had no partnership in her husband's nursery business, even though she received regular monthly checks from partnership account, kept the books, wrote checks, hired and fired employees, and a previous business registration form indicated the existence of a partnership); Cooper v. Spencer, 238 S.E.2d 805, 806 (Va. 1977) (finding no partnership where the family lived off the proceeds of the business owned by the husband but the wife did not "receive[] a share of the profits."); In re Estate of Goldstein, 688 N.E.2d 684, 691–92 (Ill. App. 1997) (holding that personal and business expenses shared through family "pot" of several bank accounts were not probative of partnership without an explicit agreement); In re Estate of Wells, 380 N.W.2d 615, 618 (Neb. 1986) (holding that a joint account was not evidence of a partnership where the wife had no right to a percentage of the profits); S. Sioux City Star v. Edwards, 357 N.W.2d 178, 180–81 (Neb. 1984) (holding that a husband supporting his wife through store profits did not render her a partner); In re Kime, 356 N.E.2d 350, 352–54 (Ill. Ct. App. 1976) (holding that a family sharing business and personal expenses through a joint account did not establish a partnership). But see Gosman v. Gosman, 318 A.2d 821, 824 (Md. Ct. App. 1974) (holding that a wife signing checks for living expenses were a profit share and evidence of partnership); In re Hassiepen, 646 N.E.2d 1348, 1354 (Ill. Ct. App. 1995) (holding that a husband's and wife's joint account used for business and personal expenses supported the existence of a partnership in light of other evidence).

[30]  41 C.J.S. *Husband and Wife* § 190 (2018) ("The determination of whether a partnership exists between spouses depends on the particular facts of each case. There is no single or conclusive test for a partnership that will suffice in every situation, and there is not an assumed partnership simply because the parties are married. The mere fact that a spouse participates in the conduct of a business does not necessarily establish a partnership between the spouses unless there exists some other indicia of a partnership. In addition, co-ownership of property and the sharing of business profits do not demonstrate a partnership because those arrangements are common in marriages.") (internal footnotes omitted).

9

partnership, the totality of the circumstances allows the Court to infer the existence of a partnership. Second, as further evidence of a de facto partnership, Edward had a check card and could withdraw funds from the business checking account. Third, "the marital household was dependent on the income from the continued operation of the store."[31] The Debtors argue that there is no partnership agreement, written or oral, and they never intended to form a partnership. The Debtors also assert that Edward never participated in the operation of the Store and, with minor exceptions, could only use the check card with Kathleen's authorization.[32]

        The Court first examines the generally undisputed facts regarding the Store and Edward's activities at the Store. In 2001, Kathleen purchased the Store and was its sole owner/manager through at least 2013.[33] In 2004, Edward was injured and became permanently disabled.[34] He has not worked since, and his only personal income is from social security and disability insurance payments.[35] From 2005 to approximately 2013, and later when Kathleen was present at the Store, Edward drove Kathleen to and from work.[36] Occasionally, he would stay at the Store during working hours and sit in the back room and watch the security monitor.[37] His only other service to the Store during this time period was to deliver excess inventory to Goodwill Industries and make deposits into the Store's business account using deposit slips

---

[31] *Plaintiff's Preliminary Statement* at ¶ 3, Dkt. No. 70

[32] *Defendants' Preliminary Statement* at ¶ IV, Dkt. No. 71.

[33] Trans. at p. 11:4–24.

[34] Trans. at 15:4–10; 63:14–15.

[35] Trans. at 23:5–14.

[36] Trans. at 15:15–20; 63:19–20.

[37] Trans. at 15:21–16:23.

completed by Kathleen.[38] From this testimony, it is apparent that between 2005 and 2013, Edward was nothing more than a "gofer" who would perform errands at Kathleen's request.

Beginning in December 2013, Kathleen became ill and periodically was absent from the Store until it ceased operations in June 2015.[39] Over that 18-month span, Kathleen utilized two options whenever she could not make it to the Store. She either closed the Store for the day or, alternatively, had Edward perform the following functions: (a) open and close the Store, and wait for the volunteer workers;[40] (b) put cash in the cash register at the beginning of the day,[41] and take cash and receipts home to Kathleen at the end of the day;[42] (c) sit in the back room and monitor activities in the Store;[43] (d) perform errands at Kathleen's direction, such as delivering extra inventory to Goodwill;[44] and (e) contact Kathleen for authorization to issue replacement checks to customers.[45]

Kathleen and Edward testified as to the following: (a) Edward did not hire, supervise, or train the staff;[46] (b) Edward was not knowledgeable about women's fashions;[47] (c)

---

[38]     Trans. at 64:1–3; 17:1–6.

[39]     Trans. at 18:12–19:14.

[40]     Trans. at 20:12–19; 64:21–24.

[41]     Trans. at 64:25–65:4.

[42]     Trans. at 65:5–10.

[43]     Trans. at 61:22–25; 65:13–16.

[44]     Trans. at 64:1–3.

[45]     Trans. at 110:9–25.

[46]     Trans. at 57:21–22; 105:14–17.

[47]     Trans. at 58:14–18; 105:18–19.

11

Edward did not interact with customers;[48] and (d) Edward did not price goods or perform other actions related to the inventory.[49]  The Commonwealth did not present evidence to contradict any of these statements.

The Court concludes that these actions and inactions are not probative of the existence of a business partnership.  These functions are strictly clerical in nature, and are not indicative of the planning, organization, direction, oversight, and/or policymaking of a business that the Court would expect to see in a partnership. Edward did not hire or supervise staff.  He knew nothing about the business of women's fashion or consignment sales.  He did not acquire or price inventory.  While his presence and level of activity at the Store may have increased, the record shows that the substance of Edward's role did not change.  He still lacked discretionary authority with respect to the Store's business operations and its financials, and there is no other basis for the Court to conclude that he took on the mantle of "business partner" after 2013.[50]

The Commonwealth also presented no evidence of any significant interactions between Edward and the Store's customers.  The Court finds the absence of such proof to be compelling.  Ostensibly, the Commonwealth represents the interests of 245 individuals with claims against the Debtors.  Its *Amended Complaint* references at least 12 consumers who lodged complaints concerning the manner in which the Store conducted business, and the parties were afforded time to conduct additional discovery.[51]  Under these circumstances, the Commonwealth's inability to produce a single witness to refute any portion of the Debtors'

---

[48]    Trans. at 104:12–17. Edward did admit that he spoke with one customer, Sarah Garnett, who said she lost her check and requested a replacement.  Edward testified that he called Kathleen, who authorized him to issue a replacement check.  Trans. at 110:4–25.

[49]    Trans. at 36:16–20; 57:23–24; 104:18–20; 105:20–21.

[50]    Trans. at 59:22–60:2; 102:23–25.

[51]    Amended Complaint, Dkt. No. 19 at ¶ 27.

testimony lends further support to the Court's conclusion that Edward played an insignificant role in the Store's operation.

### D. Financial Controls

The second and third arguments of the Commonwealth concern Edward's access to funds in the business checking account (through a check card), and the use of those funds for the general expenses of the marital household.

The evidence presented was that two checking accounts: (i) a business account in the name of the Store, and (ii) a joint personal account in the names of Edward and Kathleen. Kathleen and Edward each had check cards that provided them access to both accounts.

According to the testimony, the only income of Edward and Kathleen was the social security check, the disability check, and the revenues from the Store.[52] The Court finds informative the following colloquy between Commonwealth's attorney and Kathleen:

> Q: Okay, was the income from these two checks [social security and disability] adequate to sustain household finances?
>
> A: No.
>
> Q: Is it accurate to say you needed the store's income to kind of afford life's necessities?
>
> A: Yes.
>
> Q: And by way of illustration, . . . was your mortgage payment approximately $1,750 every month as well?
>
> \* \* \*
>
> A: Yes.
>
> Q: Okay. So using that comparison, . . . the Social Security check and the MetLife check, and in comparing those with the mortgage, again, both roughly about $1,700 and change. Would you agree?

---

[52] Trans. at 24:12–16.

> A: Yes.
>
> Q: So by that comparison, you would still need additional funds for eating, utilities, transportation, and those types of things? Would you agree?
>
> A: Yes.[53]

Upon the Commonwealth's motion, the Court admitted into evidence what appears to be the complete banking records of the business account (Exhibit A) and the joint personal account (Exhibit B) for the 2013-2015 period. The business account includes deposits and withdrawals relating to the activities of the Store, but also substantial withdrawals for the majority of purchases of groceries and other necessary household items.[54] The joint personal account mainly includes deposits of the social security and disability checks, and payment of the residential mortgage. There is documentary and testimonial evidence that funds were transferred between the business and personal accounts, including transfers of personal funds to the business account.[55]

Based on review of the testimony and the banking records, the Court finds that the income from the social security and disability checks was barely sufficient to pay the mortgage, and income from the Store was used to pay almost all other household (nonbusiness) expenses. And those expenses were paid out of the Consignments on Centre business account.

The Court further finds that the Consignments on Centre account, purportedly a business account, was used indiscriminately by Edward and Kathleen for both business and personal expenses. Although certainly not a good business practice, it is common practice where

---

[53] Trans. at 23:15–24:11. Edward also confirmed the amount of the social security and disability checks. Trans. at 66:5–18.

[54] Trans. at 46:15–17 ("Q: Is it safe to say that the majority of purchases for food came out of the Consignments on Centre account than this account? A: Yes.").

[55] Trans. at 77:6–15.

a business provides the funds for necessary expenses of a family. That Edward had access to funds in the business account for family expenses is not probative of sharing in profits of the business. This conclusion that Edward's access to the business account was not a sharing in profits of the business is strongly supported by Kathleen and Edward's uncontradicted testimony that she had to authorize each withdrawal.

The Court concludes that Edward's access to the Consignments on Centre business account was not a sharing of profits in the business. Thus, it is not probative of an intent to form a partnership.

### IV.

Edward and Kathleen never intended to form a business partnership nor is there sufficient evidence to conclude that a partnership existed by implication. Since its inception in 2001, Consignments on Centre was never operated as a partnership. At all times, Kathleen Roche ran the business as a sole proprietorship. When she became ill in late 2013, Edward Roche performed additional functions for the Store, but he was not a partner, nor did he ever become her "equal" in terms of possessing autonomy to make business decisions. For these reasons, judgment will be entered in favor of the Debtors, Edward and Kathleen Roche on the bifurcated issue of whether Edward and Kathleen operated Consignments on Centre as a business partnership.

An appropriate Order will issue.

Dated: March 21, 2018

GREGORY L. TADDONIO  gwf
UNITED STATES BANKRUTPCY JUDGE

Case administrator to mail to:
Debtors
Donald R. Calaiaro, Esq.
Jesse F. Harvey, Esq.

15